UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 MAY 15  PM 12: 16

CLERK

BY _____ *law* _____
DEPUTY CLERK

JAMES T.,                                     )
                                              )
        Plaintiff,                            )
                                              )
        v.                                    )      Case No. 2:18-cv-00015
                                              )
NANCY A. BERRYHILL,                           )
Acting Commissioner of Social Security,       )
                                              )
        Defendant.                            )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE
THE DECISION OF THE COMMISSIONER AND DENYING THE
COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 7 & 14)

Plaintiff James F. Townsend ("Plaintiff") brings this action for Title II Social

Security Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security

Income ("SSI") under the Social Security Act ("SSA"). On May 22, 2018, Plaintiff

moved to reverse the decision of the Social Security Commissioner (the

"Commissioner") that he is not disabled pursuant to 42 U.S.C. § 405(g). (Doc. 7.) On

October 2, 2018, the Commissioner moved to affirm. (Doc. 14.) On November 5, 2018,

Plaintiff replied in support of his motion.

Plaintiff seeks reversal of the Commissioner's decision for three reasons: (1)

Administrative Law Judge ("ALJ") Thomas Merrill failed to give appropriate weight to

the opinions of a testifying medical expert, state agency consultants, and an examining

occupational medicine specialist pursuant to 20 C.F.R. § 404.1527; (2) the ALJ's finding

that Plaintiff's diabetes mellitus, chronic obstructive pulmonary disease ("COPD"),

depression, and anxiety are not severe impairments is not supported by substantial

evidence; and (3) the ALJ's residual functional capacity ("RFC") determination is not

supported by substantial evidence.

Plaintiff is represented by Phyllis E. Rubenstein, Esq.  Special Assistant United States Attorney Daniella M. Calenzo represents the Commissioner.

## I.      Procedural Background.

On July 30, 2015, Plaintiff filed an application for DIB and SSI, alleging a disability onset date of November 5, 2001.  His claims were initially denied on December 10, 2015[1] and upon reconsideration on April 14, 2016.  Pursuant to Plaintiff's timely request, ALJ Merrill presided over a videoconference hearing on April 5, 2017.  Plaintiff was represented by counsel and testified at the hearing, as did vocational expert ("VE") Susan Gaudette.  In reviewing the record, ALJ Merrill determined that an expert opinion was necessary to interpret the results of a December 2016 MRI, and therefore a supplemental video teleconference hearing was convened on August 2, 2017.  At the August 2, 2017 hearing, Plaintiff again testified, as did consultative medical expert Andrew Brown, M.D., and VE Dennis J. King.  ALJ Merrill issued an unfavorable decision on September 28, 2017.  Plaintiff timely appealed to the Office of Disability Adjudication and Review Appeals Council, which affirmed the ALJ's decision in an Order dated January 8, 2018.  ALJ Merrill's determination thus stands as the Commissioner's final decision.

## II.     The ALJ's Application of the Five-Step, Sequential Framework.

In order to receive DIB or SSI benefits under the SSA, a plaintiff must be disabled[2] on or before his date last insured.  Disability is determined using a five-step, sequential-evaluation framework that assesses:

---

[1] The court assumes the ALJ's statement in his decision that Plaintiff's requests were initially denied on December 4, 2015 is a typographical error.

[2] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "The definition of 'disabled' is the same for purposes of receiving [DIB] and SSI benefits."  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R.

§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). "The claimant has the general burden of

proving that he or she has a disability within the meaning of the Act, and bears the burden

of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step

framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128

(2d Cir. 2008) (internal quotation marks and citations omitted). At Step Five, "the

burden shifts to the Commissioner to show there is other work that the claimant can

perform." *McIntyre*, 758 F.3d at 150 (internal brackets, quotation marks, and citation

omitted).

Plaintiff was born on October 20, 1972 and was 29 years old at the time of the

alleged onset of his disability. He has a high school education and attended one year of

automotive technical training. Prior to the onset of his disability, Plaintiff was a cook for

eight years and then worked on a fence construction crew. He claims disability due to

"back injury[,]" diabetes, COPD, and "depression/anxiety[.]" (AR 102.) Plaintiff's last

date insured was December 31, 2006.

At Step One, the ALJ determined that Plaintiff has not engaged in substantial

gainful activity since his alleged disability onset date of November 5, 2001. At Step

Two, ALJ Merrill found Plaintiff's degenerative disc disease of the lumbar spine and

obesity were severe impairments as of May 23, 2008, the date on which Plaintiff received

a spinal MRI that supported the degenerative disc disease diagnosis. In contrast, ALJ

Merrill found that prior to May 23, 2008, Plaintiff's lower back pain was not a severe

impairment based on evidence that following an initial injury in November 2001,

3

Plaintiff completed physical therapy, regained a normal range of motion, and "was released to a normal workload on December 11, 2001[.]" (AR 13.)

At Step Two, ALJ Merrill determined that Plaintiff's asserted impairments of diabetes mellitus, depression and anxiety, and COPD were non-severe within the meaning of the SSA regulations because these conditions imposed no more than minimal limitations on Plaintiff's work-related functioning.

With regard to Plaintiff's claimed mental health conditions, the ALJ noted that Plaintiff first reported symptoms of these conditions in April 2014 and that his symptoms improved after taking prescribed Wellbutrin and attending counseling. In assessing Plaintiff's mental health conditions, the ALJ afforded great weight to the opinion of consultative examiner Kathryn Rickard, Psy. D., who examined Plaintiff in May 2014 and October 2015 and opined that Plaintiff's ability to perform work-related activities was primarily affected by his physical condition and that he was able to concentrate and attend to tasks. ALJ Merrill also afforded substantial weight to the opinion of Plaintiff's treating mental health counselor, Mary Bissonward, MA, NBC, LMHC, LADC, that Plaintiff's mental health issues did not appear to limit his functioning because Ms. Bissonward's treating relationship put her in "the best position to have a longitudinal picture of the [Plaintiff's] mental health condition." *Id.* at 17.

The ALJ also considered the opinion of non-examining state agency consultant Edward Hurley, Ph.D., that Plaintiff's mental health conditions were non-severe based on his review of Plaintiff's medical records, which he deemed consistent with the medical evidence. In contrast, the ALJ rejected the opinion of state agency consultant Joseph Patalano, Ph.D., that Plaintiff had moderate limitations in concentration, persistence, and pace but could maintain performance in those areas for two-hour periods over an eight-hour workday because the ALJ found no evidence to support more than mild limitations on Plaintiff's concentration, persistence, and pace.

In addition to assessing the opinion evidence, ALJ Merrill considered the four areas of mental functioning for evaluating mental health disorders: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating,

4

persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c); 416.920a(c) (identifying four areas to be evaluated in assessing limitations imposed by mental health impairments). Based on the record evidence, the ALJ determined that Plaintiff had either no limitation or only mild limitations in each of the four areas.

At Step Three, ALJ Merrill found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any listed impairment, observing that "[n]o accepted medical source . . . has offered an opinion that any of the [Plaintiff's] impairments equal a section of the listed impairments[,]" that Plaintiff had not alleged his impairments equaled the severity of a listing, and that the record did not contain medical evidence to support a finding of listing-level severity. *Id.* at 19.

In addition, the ALJ considered whether Plaintiff's obesity, in conjunction with his other impairments, met or medically equaled the severity of a listing. At the time of the April 5, 2017 hearing, Plaintiff was five feet, five inches tall and weighed 260 pounds. ALJ Merrill concluded that although Plaintiff's measurements were consistent with level III obesity, that condition did not meet or equal a listing based on evidence that Plaintiff "remains fully weight bearing and does not have abnormal neurological functioning." *Id.* at 20.

The ALJ's decision reflects his analysis of numerous competing expert opinions. He gave great weight to the conclusion of non-examining consulting expert Dr. Brown that Plaintiff's lower back pain did not meet or equal Listing 1.04 for disorders of the spine and great weight to Dr. Brown's analysis of Plaintiff's specific functional limitations, finding it consistent with the objective medical evidence "including [a] bone scan showing normal radiotracer uptake throughout the lumbar spine and examination[] findings showing primarily normal strength, sensation, reflexes, and negative straight leg raises." (AR 25) (citations omitted). The ALJ afforded only some weight to the opinions of state agency consultants Elizabeth White, M.D., who opined that Plaintiff could perform light work with certain additional restrictions, and Donald Swartz, M.D., who opined that Plaintiff could perform only sedentary work with certain additional

5

restrictions. Because he noted that Drs. White and Swartz did not have the opportunity to review the entire record, the ALJ concluded that their opinions were not fully consistent with the objective medical evidence. However, he gave substantial weight to their opinions that Plaintiff's back condition did not meet or equal Listing 1.04. The ALJ gave little weight to the opinion of Karen L. Huyck, M.D., a consulting physician who examined Plaintiff on one occasion and opined that Plaintiff's condition might meet or equal Listing 1.04 because the ALJ found this opinion was undermined by Dr. Huyck's own examination and conflicted with Dr. Brown's testimony.

ALJ Merrill accorded little weight to the opinion of consulting examiner Robert B. Kellogg, M.D., who examined Plaintiff in May 2014 and December 2015 and diagnosed him with degenerative disease of the lumbar spine and back pain because Dr. Kellogg provided no analysis of Plaintiff's functional limitations. He also gave little weight to the opinion of consulting examiner Dr. Huyck, who evaluated Plaintiff's RFC in February 2017 and opined that he may not be capable of performing sedentary work on a full-time basis. ALJ Merrill found that this opinion was not supported by the objective medical evidence, including Dr. Huyck's own clinical findings. The ALJ further found that the opinion of Plaintiff's treating primary care physician, Ruth Crose, M.D., that Plaintiff was unable to perform any employment for a period of one year in connection with Plaintiff's applications to state assistance programs was entitled to no weight because Dr. Crose did not provide a function-by-function analysis of Plaintiff's limitations and merely completed a checkbox-style form without explaining her findings.

ALJ Merrill considered whether Plaintiff's reported symptoms were consistent with a medically determinable impairment or impairments, and whether the objective medical evidence showed that the alleged symptoms imposed limits on Plaintiff's functional capacity. The ALJ noted that Plaintiff "testified to an extremely limited range of functional abilities" and found, in light of the objective medical evidence and Plaintiff's contemporaneous statements to his treating providers, that Plaintiff's reported functional limitations were not entirely consistent with the evidence in the record. *Id.* at 21. He further noted that Plaintiff experienced spinal pain in connection with

6

degenerative disc disease and obesity but that Plaintiff's pain was managed effectively
with conservative treatment, including physical therapy prior to 2015, and that treatment
with medication remained conservative after 2015 despite a reported increase in
Plaintiff's symptoms.

At Step Four, ALJ Merrill determined that Plaintiff had the RFC to:

perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and
416.967(b) except the [Plaintiff] can lift twenty pounds occasionally and
ten pounds frequently. The [Plaintiff] can stand/walk for three hours and
sit for six hours in an eight-hour workday. The [Plaintiff] has no upper
extremity limitations. The [Plaintiff] can frequently operate foot controls
with his feet. The [Plaintiff] should never climb ladders, scaffoldings, or
ropes. The [Plaintiff] should not be exposed [to] unprotected heights. The
[Plaintiff] can occasionally climb stairs or ramps and occasionally balance,
stoop, and kneel. The [Plaintiff] should avoid crouching and crawling. The
[Plaintiff] can occasionally tolerate extreme cold, extreme heat, and
vibrations.

*Id.*

At Step Five, the ALJ found that an individual with Plaintiff's background and
RFC could perform such representative occupations as survey worker, information clerk,
and assembler of small parts. Because Plaintiff has not worked since November 2001,
the ALJ determined he had no past relevant work pursuant to the regulations. *See id.* at
27 (citing 20 C.F.R. §§ 404.1565, 416.965) ("We do not usually consider that work you
did [fifteen] years or more before the time we are deciding whether you are disabled
. . . applies."). Based on his finding that Plaintiff was capable of performing work that
exists in significant numbers in the national economy, the ALJ concluded that Plaintiff
was not disabled from his alleged onset date of November 5, 2001 through the date of the
decision, September 28, 2017.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

The court "conduct[s] a plenary review of the administrative record to determine if
there is substantial evidence, considering the record as a whole, to support the
Commissioner's decision and if the correct legal standards have been applied." *Cichocki*

*v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149. "It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and citation omitted) (alteration in original).

## B. Whether ALJ Merrill Erred in the Weight He Assigned to Certain Medical Opinions.

Plaintiff contends that the ALJ committed reversible legal error in failing to properly analyze multiple medical opinions in the record pursuant to 20 C.F.R. § 404.1527. Specifically, Plaintiff claims that the ALJ did not adequately explain the weight he gave to Dr. Brown's non-examining consultative expert opinion while affording only some weight to the opinions of state agency consultants Dr. White and Dr. Swartz and the opinion of examining occupational medicine specialist Dr. Huyck.

SSA regulations provide that an ALJ will consider the following factors in determining the weight to give a medical opinion: (1) whether the provider has examined the claimant; (2) whether the provider has treated the patient and the extent of any such treatment relationship; (3) whether the opinion is supported by evidence, including medical signs and laboratory findings; (4) whether the opinion is consistent with the record as a whole; (5) whether the source specializes in an area of medicine relevant to the opinion provided; and (6) any other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Burgess*, 537 F.3d at 129 (discussing applicability of regulatory factors to treating physician opinions). When the medical opinions do not unanimously support the same conclusion, "[i]t is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is

more persuasive and consistent with the record as a whole." *Banks v. Astrue*, 955 F.
Supp. 2d 178, 188 (W.D.N.Y. 2013); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d
Cir. 1998) ("[A]n ALJ is free . . . to choose between properly submitted medical
opinions[.]") (internal quotation marks and citation omitted).  Where an ALJ "adopts only
portions of a medical opinion," he or she "must explain why the remaining portions were
rejected." *Chance v. Comm'r of Soc. Sec.*, 2019 WL 2123565, at \*6 (W.D.N.Y. May 15,
2019).

 Although the ALJ afforded Dr. Brown's opinion "great weight," he nonetheless
omitted Dr. Brown's proposed limitations that Plaintiff could only sit for thirty to forty-
five minutes at a time and stand or walk for thirty minutes at a time and modified his
opinion that Plaintiff could stand for one and a half hours and walk for one and a half
hours in an eight-hour workday.[3]  In addition, Dr. Brown noted that Plaintiff experienced
shortness of breath upon exertion and clarified that he "only looked at" Plaintiff's case
from an orthopedic perspective and "did not incorporate any cardiovascular or pulmonary
pathology." (AR 82.)  Although an ALJ's explanation for rejecting part of a medical
opinion "need not be exhaustive" and suffices "if the [c]ourt can 'glean the rationale of
an ALJ's decision[,]'" *Chance*, 2019 WL 2123565, at \*6 (quoting *Mongeur v. Heckler*,
722 F.2d 1033, 1040 (2d Cir. 1983)), ALJ Merrill failed to acknowledge that he adopted
only portions of Dr. Brown's opinion and provided no explanation as to why other
limitations were either modified or rejected.

 The ALJ adopted a similar approach to the opinions of Drs. White and Swartz,
who both proposed a limitation that Plaintiff would need to change his position for three
to five minutes each hour, and Dr. Swartz's further limitation that Plaintiff should avoid
concentrated exposure to walking on uneven ground.  Although the ALJ stated generally

---

[3] It appears that ALJ Merrill "totaled" the periods for which Dr. Brown testified that Plaintiff
would be able to sit or stand to reach a combined three-hour limitation.  Plaintiff's counsel asked
Dr. Brown at the August 2, 2017 hearing whether it was "more accurate" to say that Plaintiff
"could stand for a total of an hour and a half and walk for a total of an hour and a half or the
aggregate" and Dr. Brown responded, "I would say stand for an hour and a half, walk an hour
and a half." (AR 81.)

that he afforded only "some" weight to these state agency consultant opinions, he did not explain his apparent rejection of the proposed limitations, which are bolstered by their consistency with the medical record and other expert opinions. "While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, he cannot simply selectively choose evidence in the record that supports his conclusions." *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 565 (W.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also id.* (finding remand appropriate because ALJ "failed to sufficiently explain his decision *not* to credit any of the evidence of *greater* than moderate limitations") (emphasis in original).

Plaintiff asserts that the ALJ also improperly weighed the opinion of Dr. Huyck, an examining occupational medicine specialist who evaluated Plaintiff's RFC on February 2, 2017.[4] The ALJ cited only a portion of Dr. Huyck's opinion, noting but rejecting her conclusion that Plaintiff's "tolerance of tested activities is lower than functional capacity given high levels of pain after testing suggesting that he would not be able to sustain this level of activity over an [eight-]hour day and over a[] [five-]day week," (AR 1079-80), and omitting her further opinion that Plaintiff "does not have the reading, computer, and typing skills and likely would not have the sitting tolerance" necessary for sedentary work. *Id.* at 1079. In support of his decision to discount Dr. Huyck's opinion, ALJ Merrill noted evidence that Plaintiff was able to sit and move without assistance despite a limited range of motion and had normal strength, sensation, reflexes, and straight leg raises. However, he failed to acknowledge that Dr. Huyck is a specialist in occupational medicine and an examining physician who is familiar with SSA regulations. The ALJ's failure to address these factors was in error, as was his rejection of a material component of Dr. Huyck's opinion without an adequate explanation. *See Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) ("[W]hen a medical opinion stands uncontradicted, a circumstantial critique by non-physicians . . . must be overwhelmingly compelling in order to overcome it") (citing *Burgess*, 537 F.3d at 129);

---

[4] The ALJ's decision states that Dr. Huyck examined Plaintiff in February 2007 rather than February 2017. The court assumes this is a typographical error.

*see also Sanville v. Comm'r of Soc. Sec.*, 2017 WL 4174783, at \*7 (D. Vt. Sept. 20, 2017) (finding ALJ erred in failing to adequately address opinion of examining occupational medicine specialist in formulating claimant's RFC).

"[A]n RFC determination is a medical determination, [and] an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010); *see also Webster v. Colvin*, 2014 WL 4060570, at \*4-5 (M.D.N.C. Aug. 15, 2014) (ruling that remand is necessary where ALJ omits limitations included in mental health opinions in the record while "fail[ing] to offer any reason to discredit . . . these limitations[,]" requiring a conclusion that "substantial evidence fails to support the ALJ's mental RFC finding"). Because the ALJ's decision does not provide a basis for this court to determine whether the applicable legal standards were satisfied and because it appears that the ALJ may have impermissibly "substitute[d] his own expertise or view of the medical proof for . . . competent medical opinion[s][,]" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015), Plaintiff's motion to reverse the Commissioner's decision is GRANTED.

"On remand, the Commissioner must assign weight to the medical source statements of every physician in the record without ignoring either the statements that would be favorable to [P]laintiff's application or unfavorable statements that might be incorporated into the RFC." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 300 n.9 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(f)(2)(ii)). Because all of the medical opinions in the record and Plaintiff's RFC will be reconsidered, the court does not address Plaintiff's alternative challenge concerning whether substantial evidence supports the ALJ's Step Two severity determinations. *See Pugh v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 305, 315-16 (W.D.N.Y. 2018) (finding that court need not reach alternative arguments once it has determined remand is necessary). Nonetheless, the court notes that "[an] RFC determination must account for limitations imposed by both severe and non-severe impairments[,]" and that failure to adequately account for limitations related to

11

non-severe impairments constitutes legal error. *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

### C.   Whether Remand for the Calculation of Benefits is Warranted.

Remand for the calculation of benefits is appropriate in cases where "the records provided persuasive evidence of total disability that rendered any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999); *see also Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation of benefits where there was an "infinitesimal likelihood that employment of any kind would be available" to claimant). In this case, although the ALJ's decision does not permit the court to fully evaluate his reasoning, the record also does not present overwhelming evidence that Plaintiff is totally disabled with an "infinitesimal likelihood" of employment in light of the fact that only one medical source offered a tentative opinion that he is incapable of performing even sedentary work. *See Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (declining to remand for an award of benefits where record included tentative diagnoses and conflicting opinions).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the decision of the Commissioner (Doc. 7) is GRANTED, the Commissioner's motion to affirm (Doc. 14) is DENIED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this *15th* day of May, 2020.

Christina Reiss, District Judge
United States District Court